MISSISSIPPI VALLEY PORTLAND CE-
MENT COMPANY, a Mississippi
Corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 3970.

United States District Court
S. D. Mississippi,
Jackson Division.

Oct. 27, 1967.

Vardaman S. Dunn, Cox, Dunn &
Clark, Jackson, Miss., for plaintiff.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for defendant.

OPINION

DAN M. RUSSELL, District Judge.

This action is for the recovery of income taxes, which plaintiff-taxpayer alleges were illegally assessed and collected, and is before the Court on the pleadings, a stipulation of facts, and briefs of opposing counsel.

The Court finds that the facts are as set forth in the Stipulation of Facts which are a part of the record herein. As the stipulation is lengthy and the exhibits attached thereto voluminous, only so much of them as are necessary to a decision will be referred to.

According to the stipulation the one issue to be determined at the present time is the excludability from taxable income of distributions awarded to stockholder-patrons of the corporate taxpayer during each of the taxable years ended January 31, 1962, January 31, 1963, and January 31, 1964. A resolution of this issue in favor of taxpayer would result in a refund to taxpayer of the tax and interest assessed, totaling $505,561.-97 paid on February 21, 1966, together with interest from that date. Should the defendant prevail, other issues remain.

Plaintiff, also referred to herein as taxpayer or company, was incorporated in Mississippi in February 1956. Of 500,000 shares of stock, approximately 417,000 shares were issued to 8 individuals, and the balance to friends, relatives and employees. In March and April 1957 an additional 1,400,000 shares were sold to the general public in four southern states, approximately 90% being sold in Mississippi. Registration Statements authorizing the sale of stock were filed with the Securities and Exchange Commission in Washington, D. C., and with appropriate state agencies. The company was organized as a cooperative for the purpose of manufacturing and

selling cement. Its charter provides that the record owner, or its assign, of every five shares of stock has a preferred patronage right to purchase one barrel of cement during each fiscal year. In January, prior to each fiscal year beginning February 1 of the tax years in question, the Board of Directors adopted a similar resolution allocating the entire cement production to the stockholder patrons or their assigns on the basis of their stock ownership. It was further resolved that any profit margins from the production of cement would belong to the stockholder-patrons of record at the end of each fiscal year to be held for their account in trust and refunded as a patronage rebate, in either cash or reserve certificates, with the further provision that the obligation of the company to produce cement as an agent and trustee of its stockholder-patrons would be enforceable as a contract. It was further provided that sales of cement would be made to or for the account of Valley Cement Sales, Inc., a separate corporation organized as a sales agency for the benefit of stockholders-patrons who assign to it their patronage rights, and any cement not taken by stockholders or their assignees each month following production could be sold by the Company or delivered to the sales agency for the account of such stockholders. In the tax years involved, all cement was delivered to the sales agency for sale in accordance with either assignments of patronage rights or as provided by the resolutions referred to above. At the conclusion of each tax year the net receipts from sales of cement, over and above production costs, were allocated or distributed to stockholder-patrons of record at the end of each fiscal year on a pro-rata basis. As stated above, the resolutions of taxpayer's Board of Directors allocated the entire production of cement to its patronage-stockholders, and it is not shown that taxpayer had any stockholders other than patronage-stockholders, or did any business except on behalf of patronage-stockholders.

Taxpayer, in its income tax returns for the fiscal years involved, excluded the aforesaid patronage rebates, reporting no taxable income. Taxpayer's contention is that, as a non-exempt, cooperative corporation, its distributions of patronage dividends are excludable.

Pertinent statutes include the general definition of gross income, 26 U.S.C.A., Sec. 61 (a) (2) and (3) and statutes, effective after December 31, 1962, which specifically exclude patronage dividends as defined therein, and which statutes are as follows:

"SECTION 61.  GROSS INCOME DEFINED.

(a) *General Definition.*—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

\*     \*     \*     \*     \*     \*

(2) Gross income derived from business;

(3) Gains derived from dealings in property;

\*     \*     \*     \*     \*     \*

(26 U.S.C.1964 ed., Sec. 61.)

SECTION 1381.  (as added by Sec. 17 (a), Revenue Act of 1962, P.L. 87–834, 76 Stat. 960) [1] ORGANIZATIONS TO WHICH PART APPLIES.

(a) *In General.*—This part shall apply to—

(1) any organization exempt from tax under section 521 (relating to exemption of farmers' cooperatives from tax), and

(2) any corporation operating on a cooperative basis other than an organization—

(A) which is exempt from tax under this chapter,

(B) which is subject to the provisions of—

---

I. This section of the Code is effective for taxable years beginning after December 31, 1962.

(i) part II of subchapter H (relating to mutual savings banks, etc.), or

(ii) subchapter L (relating to insurance companies), or

(C) which is engaged in furnishing electric energy, or providing telephone service, to persons in rural areas.

\* \* \* \* \* \*

(26 U.S.C.1964 ed., Sec. 1381).

SECTION 1388. (as added by Sec. 17(a), Revenue Act of 1962, supra)[2] DEFINITIONS; SPECIAL RULES.

(a) *Patronage Dividend.*—For purposes of this subchapter, the term "patronage dividend" means an amount paid to a patron by an organization to which part I of this subchapter applies—

(1) on the basis of quantity or value of business done with or for such patron,

(2) under an obligation of such organization to pay such amount, which obligation existed before the organization received the amount so paid, and

(3) which is determined by reference to the net earnings of the organization from business done with or for its patrons.

Such term does not include any amount paid to a patron to the extent that (A) such amount is out of earnings other than from business done with or for patrons, or (B) such amount is out of earnings from business done with or for other patrons to whom no amounts are paid, or to whom smaller amounts are paid, with respect to substantially identical transactions."

As to patronage dividends allocated or distributed prior to the effective date of Section 1381 and 1388, taxpayer relies on prior tax rulings and court decisions, particularly the holdings of United States v. Mississippi Chemical Company, (5th Cir.) 326 F.2d 569, affirming a District Court decision in Mississippi Chemical Corp. v. United States, 197 F. Supp. 490. In that case, it was held that the relationship between the nonexempt cooperative taxpayer and its stockholder-patrons met all the recognized tests required in order to exclude patronage dividends. The Court said:

"The basic principles of law governing the taxation of non-exempt cooperatives may be thus summarized:

(1) When a legally enforceable obligation exists to refund to qualified purchasers (stockholder-patrons) their proportionate share of gross receipts above costs and operating expenses based upon their respective purchases, such receipts are income of the patron and not income of the cooperative and consequently are to be excluded in the computation of the cooperative's gross income. \* \* \*

This exclusion is enforced by the courts on the grounds that (1) under the pre-existing legal obligation the margins never become the property of the cooperative and are not a part of its income, (2) money received by one in a business transaction which he has no right to retain but must account for to another cannot be said to be a gain or profit to him, (3) patronage refunds are distributions of money belonging to the patrons rather than distribution of income of the cooperative, (4) while held by the cooperative the funds are in its hands as agent or trustee for its patrons to whom it is legally obligated to repay the same, and (5) patronage refunds are in reality discounts or rebates paid under a pre-existing legal obligation and are just as allowable as any other discount upon the purchase price of any commodity. Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752; Saenger v. Commissioner of Internal Revenue, 5th Cir., 69 F.2d 633; Uniform Printing & Supply Co. v. Commissioner of Internal Revenue, 7 Cir., 88 F.2d 75; Farmers Cooperative Co. v. Birming-

---

2. This section of the Code is effective for taxable years beginning after December 31, 1962.

ham, N.D.Iowa, 86 F.Supp. 201; State of Mississippi v. Morgan Gin Co., 186 Miss. 66, 189 So. 817."

Since December 31, 1962, the above quoted statutes recognize the excludability by a true non-exempt cooperative of patronage dividends, provided the conditions stated therein are met.

The distinguishing features between the case at hand and United States v. Mississippi Chemical Company, supra, and the cases cited therein in support of excludability seems to this Court to lie in the fact that the taxpayer in those cases was found to be a true cooperative, organized to do business with its patrons. As stated in Mississippi Chemical, 326 F.2d page 573:

"The record demonstrates, and the district court found, that the Mississippi Chemical Corporation and its patrons and its stockholders or members 'really meant to, and did, conduct business' in accordance with the provision of its charter."

Farmers Cooperative Co. v. Birmingham, D.C., 86 F.Supp. 201, recites the history of the rapid growth in this country of cooperatives in operating for the mutual benefit of either consumer or producer members, which groups normally have a common purpose of either consuming the product furnished by the cooperative or selling to the cooperative their common products. The Congress has benefited such businesses which meet certain requirements with tax exemption. For those of non-exempt status, no statute until 1962 excluded patronage rebates, but rulings of the Tax Commissioner and the courts generally did.

There is nothing in the method of doing business by the taxpayer in this case that distinguishes it from the average or normal corporation doing business for profit, no matter that taxpayer is called a cooperative, or that the dividends to stockholders are referred to as patronage rebates. Other characteristics of this taxpayer akin to that of a corporation for profit is that the dividends were payable only to stockholders of record at the end of each fiscal year, leaving stockholders, who might have sold their shares prior thereto, with no entitlement to a rebate on the basis of earnings during the fiscal year; and the fact that, as stipulated, actually no stockholder used the cement produced. All allocations were assigned to a sales agency or sold by that agency. As further stipulated, any allocations and delivery of cement to a patron were discouraged.

It is the opinion of this Court, after carefully scrutinizing the structure of this taxpayer and its method of doing business, that it was not doing business with its consumer patrons or assigns in the historical sense of a consumer cooperative, but that its stockholders are in no different category from that of any corporation interested in profits, no matter whether the source of that profit be from the production of cement or any other product, and that accordingly the sums paid here are not excludable from taxable income.

Let the government prepare an appropriate order to this effect, retaining the jurisdiction of this Court on such other issues as might be involved.